**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

CHECKFREE CORPORATION
and CASHEDGE, INC.,

    Plaintiffs,

vs.                                             Case No. 3:12-cv-15-J-34JBT

METAVANTE CORPORATION and
FIDELITY NATIONAL INFORMATION
SERVICES, INC.,

    Defendants.
_____

METAVANTE CORPORATION and
FIDELITY NATIONAL INFORMATION
SERVICES, INC.,

    Counterclaim-Plaintiffs,

vs.

CHECKFREE CORPORATION,
CASHEDGE, INC., and FISERV, INC.,

    Counterclaim-Defendants.
_____

**ORDER**

This case is before the Court on CheckFree's Dispositive Motion For Summary Judgment Of Invalidity Of All Asserted Claims Of U.S. Patent No. 7,734,543 Based On Indefiniteness, filed by Counterclaim-Defendants CheckFree Corporation, CashEdge, Inc., and Fiserv, Inc. (collectively "CheckFree") (Doc. 140; Motion). Defendants/Counterclaim-Plaintiffs Metavante Corporation and Fidelity National Information Services, Inc. (collectively "Fidelity"), have filed a response in opposition to the Motion (Doc. 147; Fidelity Response),

and the parties, with leave of Court, have each filed reply memoranda.  (Doc. 153; CheckFree Reply; Doc. 157; Fidelity Sur-Reply).  Additionally, Counsel for the parties presented argument regarding the issues raised in the Motion at the Claim Construction Hearing, held on April 25, 2013.   (Doc. 170; Claim Construction Hearing Transcript ("Tr.") at 171-76, 193-98).

**I.     Background**

In the Motion, CheckFree contends that independent Claim 17, and dependent claims 18, 20-22, of Fidelity's United States Patent No. 7,734,543 ('543 Patent)[1] are invalid as indefinite under 35 U.S.C. § 112(b).  CheckFree Motion at 1.  CheckFree argues that because Fidelity asserts only Claims 17, 18, and 20-22 of the '543 Patent against CheckFree, the granting of Checkfree's Motion would dispose of Count V of Fidelity's Counterclaim in its entirety.  Id.  Specifically, CheckFree asserts that a "defect" in the language in Claim 17, upon which Claims 18, and 20-22 are dependent, leaves "the scope of Claim 17 . . . not reasonably ascertainable and therefore renders the claim invalid."  Id.

Entitled "Electronic Bill Presentment And Payment System," the '543 Patent provides for "[a] switching system for the electronic presentment and payment of bills between a Consumer and a Biller."  '543 Patent (Abstract). Independent Claim 17 reads as follows (with the disputed claim term underlined):

> 17.    A method for electronic presentment and payment of bills over a network, comprising:
> providing a switching network for facilitating electronic presentment and payment of bills;

---

[1] Defendant/Counterclaim-Plaintiff Metavante Corporation is the assignee of the '543 Patent. See '543 Patent; (Doc. 100; Fidelity Counterclaim ¶ 44).

> establishing electronic communication between said switching network and first and second biller terminals and first and second consumer terminals, said switching network being a multi-standard switch configured to communicate with said first and second biller terminals and said first and second consumer terminals in either of at least first and second message standard protocols, said switching network communicating with at least one of said first and second biller terminals and said first and second consumer terminals using said first message standard protocol and at least one of said first and second biller terminals and said first and second consumer terminals using said second message standard protocol;
> generating bill summary data from complete bill data provided by each of said first and second billing terminals;
> selectively routing portions of said bill summary data via the switching network to present appropriate portions of said bill summary data to <u>said first and second consumer billing terminals</u>.

'543 Patent, cl.17 (emphasis added). The claim term at issue is "said first and second consumer billing terminals." CheckFree argues that the claim term is indefinite because it lacks an antecedent basis, and therefore is invalid. <u>See e.g.</u> (Doc. 121; CheckFree's Opening Claim Construction Brief ("CheckFree Brief") at 21). However, the term is also before the Court for claim construction because Fidelity requests that the Court "correct" the "typographical error" to read "said first and second consumer terminals." (Doc. 123; Defendants' Claim Construction Brief ("Fidelity Brief") Brief at 38). Thus, the parties have agreed to address CheckFree's Motion in the context of claim construction. Tr. at 171; <u>see also</u> <u>id.</u> at 171-76, 193-98.

## II. Discussion

**"said first and second consumer billing terminals"**

| Term | CheckFree's Proposed Construction | Fidelity's' Proposed Construction |
|---|---|---|
| "said first and second consumer billing terminals"<br><br>'543 Patent, Claim 17. | Claim is indefinite | "said first and second consumer terminals" |

Whether a claim term is indefinite, and whether it can be corrected by the Court, implicates two different standards. "[T]he definiteness of claim terms depends on whether those terms can be given any reasonable meaning. Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347-48 (Fed. Cir. 2005). The definiteness requirement does not require absolute clarity; "[o]nly claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite." Id. at 1347. Because a claim in an issued patent is presumed valid, indefiniteness must be established by "clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area." Halliburton Energy Servs. v. M-I LLC, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008). If the Court concludes that a claim is "not 'amenable to construction,' then the claim is invalid as indefinite under 35 U.S.C. § 112." CBT Flint Partners, LLC v. Return Path, Inc., 654 F.3d 1353, 1358 (Fed. Cir. 2011)(citation omitted).

A claim of indefiniteness, of course, often implicates the district court's authority to correct an obvious error in a claim. CBT Flint Partners, 654 F.3d at 1358; see also Group One Ltd. v. Hallmark Cards, Inc., 407 F.3d 1297, 1303 (Fed. Cir. 2005)(an error apparent

from the face of the patent can be corrected by the district court); Hoffer v. Microsoft Corp., 405 F.3d 1326, 1331 (Fed. Cir. 2005). The Federal Circuit advises that a district court can act to correct an error in a patent "only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." Novo Inds., L.P. v. Micro Molds Corp., 350 F.3d 1348, 1354, 1357 (Fed. Cir. 2003)(emphasis added); see also Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp., 587 F.3d 1339, 1353 (Fed. Cir. 2009). "Any correction of a claim has to be consistent with the invention 'described in the specification and drawings of the original patent.'" CBT Flint Partners, 654 F.3d at 1359 (citation omitted). However, a court "'may not redraft claims, whether to make them operable or to sustain their validity.'" Rembrandt Data Techs., LP v. AOL, LLC, 641 F.3d 1331, 1339 (Fed. Cir. 2011)(citation omitted). Ultimately, "[i]f a correction cannot be made, the claim . . . is invalid for indefiniteness . . . ." Novo Inds., 350 F.3d at 1358. Thus, the Court must consider whether Fidelity's proposed correction of the phrase "said first and second consumer billing terminals" to read "said first and second consumer terminals" is 1) subject to reasonable debate, or 2) belied by the prosecution history.

CheckFree offers several alternative readings of the phrase "said first and second consumer billing terminals," which it argues make any correction subject to "reasonable debate." CheckFree suggests that the phrase could mean "biller terminals," which does have an antecedent, "consumer service providers," which CheckFree acknowledges was amended out of Claim 17 during the prosecution history of the '543 Patent, or "consumer terminals" as Fidelity contends. See CheckFree Brief at 22; CheckFree Motion at 6; Tr. 193-97.

CheckFree also argues that the patent provides no basis for the Court to choose between the two alternative possible corrections, and thus any correction is "subject to reasonable debate." CheckFree Motion at 5-7. Fidelity disagrees, arguing that the patent specification does not disclose sending the bill summary data anywhere other than to consumer terminals. Fidelity Response at 8 (citing '543 Patent figs. 3, 4; col.4 ll.5-10; col.5 ll.14-50).

Claim 17 on its face demonstrates that the final reference to "said first and second consumer billing terminals" can only mean "said first and second consumer terminals." The definite article "said" is used before various terms throughout Claim 17, referring to "switching network," "first and second biller terminals," "first and second consumer terminals," "first and second message standard protocols," and "bill summary data." Each time such a term is repeated in Claim 17, after its first appearance, it is preceded by the definite article "said," clearly referring back to the first reference to the claim term, and indicating that the terms are one and the same. See Creative Internet Advertising Corp. v. Yahoo!, Inc., 476 F. App'x 724, 728 (Fed. Cir. 2011)(phrase beginning with word "said" refers to antecedent phrase); Baldwin Graphic Sys., Inc. v. Siebert, Inc., 512 F.3d 1338, 1342 (Fed. Cir. 2008)(referencing "[t]he subsequent use of definite article[ ] . . . 'said' in a claim to refer back to the same claim term"). The phrase "said first and second consumer terminals" appears in Claim 17 three times following the original antecedent. Thus, it is clear that the final reference to the term, preceded by the adjective "said" refers to the original antecedent phrase "first and second consumer terminals," as did the other three "said" references.

Additionally, construing the aberrant phrase as reading "said first and second consumer terminals" makes substantive sense on the face of the Claim. Step 3 of the four-step method claim teaches:

> generating bill summary data from complete bill data provided <u>by</u> each of said first and second billing terminals.

'543 Patent, cl.17 (emphasis added). Step 4 reads:

> selectively routing portions of said bill summary data via the switching network <u>to present</u> appropriate portions of said bill summary data <u>to</u> said first and second consumer billing terminals.

<u>Id.</u> (emphasis added). Logically, the "bill summary data" would not be routed back and presented to the "first and second billing terminals," from whence it came, but rather would be routed to the "first and second consumer terminals," to complete the information exchange and communication process between billers and consumers, which CheckFree acknowledges is the purpose of the '543 Patent. <u>See</u> CheckFree Motion at 3. Thus, CheckFree's first proposed alternative reading substituting the term "biller terminals" for "consumer billing terminals" is not viable nor does it give rise to reasonable debate.

Moreover, the '543 Patent specification does not support a reading of the disputed term to be a "consumer service provider." The patent defines "Consumer Service Provider" ("CSP") as

> an individual, company, financial institution or their affiliates, or any other entity that presents bill summary data in electronic form for ultimate distribution to their respective customers.

'543 Patent col.1 ll.58-61. The invention is described as follows:

> The present invention relates to a switching system for the electronic presentment and payment of bills between a

-7-

> Consumer and a Biller. The system includes an open, interoperable switching network for <u>routing bill summary information between a Biller and a Consumer</u>. Bill summary files are generated by a Bill Service Provider. Consumer Service Providers poll the Bill Service Providers through the switching network for newly generated bill summary files. <u>The bill summary files are routed through the switching network to the appropriate Consumer Service Provider</u>. <u>Customers</u> of the Consumer Service Provider <u>log on to the web site of the Consumer Service Provider to access bill summary data</u>. In addition to viewing the bill summary files electronically, the Consumer can initiate electronic payment of previously presented bills or bills that have not been presented electronically.

'543 Patent col.2 ll.36-51; see also id. Abstract. The embodiment depicted in Figure 1 describes that the "Consumer terminals 125 and Biller terminals 105 are, in turn, electronically connected to the CSP [consumer service processor] devices 120 and BSP [biller service processor] devices 110, respectively." '543 Patent fig.1 and col.3 ll. 40-42. Figure 2 similarly shows the exchange of information between Biller Terminals 105 and Consumer Terminals 125 via the BSP and CSP. '543 Patent fig. 2. Further, the specification provides that in the embodiment illustrated by '543 Patent fig. 3, "the CSP and BSP devices have been eliminated so that the Consumer and Biller terminals communicate directly with the switching network." Id. col.3 ll. 34-35. Likewise, Figure 4 illustrates presenting the bill summary file to the Consumer via the CSP. Specifically, "Consumers at their terminals 125 log on to the web site of their CSP to access their bill summary files." Id. col.5 ll.48-49. Thus, the "consumer service provider" provides a conduit through which the consumer may access the bill summary data, which ultimately, consistent with the purpose of the patent, ends up with the consumer at the consumer terminal 125. See e.g. '543 Patent col.2 ll.36-40 ("The present invention relates to a switching system for the electronic presentment and payment

of bills between a Consumer and a Biller . . . . [that] includes an open, interoperable switching network for routing bill summary information between a Biller and a Consumer."). Reading Step 4 of Claim 17 to mean "routing portions of said bill summary data" to the consumer service provider and no further, would not accomplish this purpose.

Moreover, the inventor specifically amended Claim 17 in response to the Examiner's initial rejection, to change "consumer service provider" to "consumer billing terminals." (Doc. 147-5; '543 Patent Amendment A at 9). That Fidelity argued to the Court that the patentee did not change the purpose and meaning of the claim, and that the Examiner continued to treat the claim as involving presentment to consumer terminals, does not require the Court to conclude that the term "consumer billing terminals" may debatably mean "consumer service providers," as CheckFree urges. Tr. at 195-96. Thus, the prosecution history does not suggest that "said consumer service provider" is a reasonably debatable alternative reading of "said first and second consumer billing terminals." Additionally, the phrase "consumer service provider" has no antecedent in Claim 17 which is signaled by the definite article "said."

Based upon the language on the face of the claim, as well as the specification and prosecution history of the '543 Patent, one of ordinary skill in the art would know that the phrase "said first and second consumer billing terminals" found in the last step of Claim 17, should be construed as "said first and second consumer terminals." See CBT Flint Partners, 654 F.3d at 1358-59.

| Term | Court's Construction |
|---|---|
| "said first and second consumer billing terminals"<br><br>'543 Patent, Claim 17. | "said first and second consumer terminals" |

Because, the Claim term "said first and second consumer billing terminals" is amenable to construction, see Datamize, LLC, 417 F.3d at 1347, the claim term is not indefinite. Accordingly, it is hereby

**ORDERED**:

1.  CheckFree's Dispositive Motion For Summary Judgment Of Invalidity Of All Asserted Claims Of U.S. Patent No. 7,734,543 Based On Indefiniteness (Doc. 140) is **DENIED**.

2.  The Court's determination of the remaining claim construction issues raised by the parties is **DEFERRED**, pending resolution of Fidelity's Motion to Stay (Doc. 184). See (Doc. 210; 08/13/13 Order Deferring Ruling on Motion to Stay).

**DONE AND ORDERED** in Jacksonville, Florida, this 22nd day of August, 2013.

*[signature]*
**MARCIA MORALES HOWARD**
United States District Judge

lc12
Copies to:

Counsel of Record