# United States Court of Appeals
# for the Federal Circuit

———————————

**ACCENTURE GLOBAL SERVICES, GMBH** AND
**ACCENTURE LLP,**
*Plaintiffs-Appellants,*

v.

**GUIDEWIRE SOFTWARE, INC.,**
*Defendant-Appellee.*

———————————

2011-1486

———————————

Appeal from the United States District Court for the District of Delaware in No. 07-CV-0826, Judge Sue L. Robinson.

———————————

Decided: September 5, 2013

———————————

J. MICHAEL JAKES, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief were ERIKA H. ARNER and JUSTIN R. LOWERY.

MARK A. LEMLEY, Durie Tangri, LLP, of San Francisco, California, argued for defendant-appellee. With him on the brief was DARALYN J. DURIE.

———————————

Before RADER, *Chief Judge,* LOURIE and REYNA, *Circuit Judges.*

**EXHIBIT 1**

Opinion for the court filed by *Circuit Judge* LOURIE.

Dissenting opinion filed by *Chief Judge* RADER.

LOURIE, *Circuit Judge*.

Accenture Global Services, GmbH and Accenture, LLP ("Accenture") appeal from the grant of summary judgment by the United States District Court for the District of Delaware holding that all claims of U.S. Patent 7,013,284 (the "'284 patent") are invalid under 35 U.S.C. § 101. *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 800 F. Supp. 2d 613, 621–22 (D. Del. 2011). Accenture appealed that determination only as to claims 1–7, directed to a system for generating tasks to be performed in an insurance organization, but did not appeal the similar method claims 8–22. As described more fully below, we *affirm* the district court's judgment and hold that the system claims before us recite patent-ineligible subject matter.

BACKGROUND

I. The '284 Patent

The '284 patent describes "[a] computer program . . . for handling insurance-related tasks." '284 patent col. 3 ll. 23–25. The patent discloses various software components of the program, including a "data component that stores, retrieves and manipulates data" and a client component that "transmits and receives data to/from the data component." *Id.* col. 3 ll. 25–29. The client component also includes a business component that "serves as a data cache and includes logic for manipulating the data." *Id.* col. 3 ll. 29–31. The program further describes a controller component to handle program events and an adapter component to interface with a data repository. *Id.* col. 3 ll. 31–35.

The specification contains detailed descriptions of the various software components, *see id.* col. 8–107, including many of the functions those components utilize and how those components interact. The patent contains two

ACCENTURE GLOBAL SERVICES v. GUIDEWIRE SOFTWARE, INC.   3

independent claims, both of which require generating and
organizing insurance-related tasks.

Claim 1 is a claim to a system for generating tasks to
be performed in an insurance organization.  The system
stores information on insurance transactions in a data-
base.  Upon the occurrence of an event, the system deter-
mines what tasks need to be accomplished for that
transaction and assigns those tasks to various authorized
individuals to complete them.  In order to accomplish this,
the claimed system includes an insurance transaction
database, a task library database, a client component for
accessing the insurance transaction database, and a
server component that interacts with the software compo-
nents and controls an event processor, which watches for
events and sends alerts to a task engine that determines
the next tasks to be completed.

Claim 1 is reproduced below:

A system for generating tasks to be performed in
    an insurance organization, the system com-
    prising:

an insurance transaction database for storing in-
    formation related to an insurance transaction,
    the insurance transaction database compris-
    ing a claim folder containing the information
    related to the insurance transaction decom-
    posed into a plurality of levels from the group
    comprising a policy level, a claim level, a par-
    ticipant level and a line level, wherein the
    plurality of levels reflects a policy, the infor-
    mation related to the insurance transaction,
    claimants and an insured person in a struc-
    tured format;

a task library database for storing rules for de-
    termining tasks to be completed upon an oc-
    currence of an event;

a client component in communication with the insurance transaction database configured for providing information relating to the insurance transaction, said client component enabling access by an assigned claim handler to a plurality of tasks that achieve an insurance related goal upon completion; and

a server component in communication with the client component, the transaction database and the task library database, the server component including an event processor, a task engine and a task assistant;

wherein the event processor is triggered by application events associated with a change in the information, and sends an event trigger to the task engine; wherein in response to the event trigger, the task engine identifies rules in the task library database associated with the event and applies the information to the identified rules to determine the tasks to be completed, and populates on a task assistant the determined tasks to be completed, wherein the task assistant transmits the determined tasks to the client component.

*Id.* col. 107 ll. 25–59.

Claim 8 claims a method for generating tasks to be performed in an insurance organization.  The method takes an insurance transaction and applies rules to that transaction to determine tasks to be completed.  These tasks are made accessible to authorized individuals who then complete the task.

Claim 8 reads as follows:

An automated method for generating tasks to be performed in an insurance organization, the method comprising:

transmitting information related to an insurance transaction;

determining characteristics of the information related to the insurance transaction;

applying the characteristics of the information related to the insurance transaction to rules to determine a task to be completed, wherein an event processor interacts with an insurance transaction database containing information related to an insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level, wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format;

transmitting the determined task to a task assistant accessible by an assigned claim handler, wherein said client component displays the determined task;

allowing an authorized user to edit and perform the determined task and to update the information related to the insurance transaction in accordance with the determined task;

storing the updated information related to the insurance transaction; and

generating a historical record of the completed task.

*Id.* col. 108 ll. 12–41.

Both claim 1 and claim 8 disclose aspects of "generating tasks to be performed in an insurance organization." Claim 1 and claim 8 further include many of the same software components.  They both include an insurance transaction database, which contains a policy level, a

claim level, a participant level, and a line level.  Further, both the system and the method claims require a client component for allowing an assigned claim handler to access tasks, an event processor, and a task assistant for scheduling and monitoring those tasks.

## II. District Court Proceedings

On December 18, 2007, Accenture filed suit against Guidewire alleging infringement of the '284 patent as well as asserting various state law claims.  *Accenture Global Servs.*, *GmbH v. Guidewire Software, Inc.*, 691 F. Supp. 2d 577, 579 (D. Del. 2010).   Guidewire asserted multiple affirmative defenses including that the patent was invalid under 35 U.S.C. § 101 for claiming non-patent-eligible subject matter.  Guidewire moved for summary judgment, asserting that the patent was invalid because claims 1, 8, and their related dependent claims did not meet the machine-or-transformation test articulated in our decision in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (en banc) *aff'd on other grounds sub nom. Bilski v. Kappos*, 560 U.S. ___, 130 S. Ct. 3218 (2010).  Because the Supreme Court had by then granted certiorari in *Bilski*, but had not yet issued its own decision, the district court denied the motion for summary judgment without prejudice, allowing Guidewire to renew the motion after a Supreme Court decision issued.   *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, No. 07-826-SLR (D. Del. Feb. 26, 2010), ECF No. 478.

After the Supreme Court issued its decision in *Bilski*, Guidewire renewed its motion for summary judgment, arguing that the '284 patent is drawn to abstract ideas that fail the machine-or-transformation test.  On May 31, 2011, after briefing from both sides, the district court granted Guidewire's motion for summary judgment, finding the claims of the '284 patent ineligible because the claims are drawn to abstract ideas.  *Accenture*, 800 F. Supp. 2d at 621–22.

The district court held that the '284 patent was "directed to concepts for organizing data rather than to specific devices or systems, and limiting the claims to the insurance industry does not specify the claims sufficiently to allow for their survival." *Id.* at 621 (citing *Bilski*, 130 S. Ct. at 3231; *Parker v. Flook*, 437 U.S. 584, 589–90 (1978)). Specifically, the court held that method claim 8 is patent-ineligible because none of the claim limitations restrict claim 8 to a concrete application of the abstract idea, and that the dependent method claims only add "limitations regarding potential claim information categories." *Id.* at 621. The district court found that system claim 1 is patent-ineligible because the claim language "mirrors the language of the method disclosed in claim 8." *Id.* Those conclusions, "in conjunction with the court's prior conclusion that the ['284 patent fails] the machine or transformation test" led the court to grant the motion for summary judgment of invalidity under § 101.

Accordingly, the district court entered final judgment in favor of Guidewire; Accenture timely appealed the summary judgment holding only as to system claims 1–7, leaving the judgment of invalidity as to the method claims not appealed. Although Accenture appealed the judgment as to all system claims 1–7, the briefing and argument from both parties focused only on system claim 1 and method claim 8, lending support to the conclusion that the eligibility of dependent claims 2–7 depends on the eligibility of claim 1.

We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

I. Related System and Method Claims

We review the grant or denial of summary judgment applying the law of the relevant regional circuit. *Teva Pharm. Indus. v. AstraZeneca Pharm. LP*, 661 F.3d 1378, 1381 (Fed. Cir. 2011). The Third Circuit employs plenary review of a district court's grant of summary judgment, viewing the facts in the light most favorable to the non-

moving party. *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007). We apply our own law, however, with respect to issues of substantive patent law. *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1016 (Fed. Cir. 2006). Patent eligibility under § 101 presents an issue of law that we review *de novo*. *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012). This legal conclusion may contain underlying factual issues. *Ultramercial, Inc. v. Hulu, LLC*, No. 2010-1544, 2013 WL 3111303, at *3 (Fed. Cir. June 21, 2013).

We recently evaluated 35 U.S.C. § 101 and its application to computer software in *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269 (Fed. Cir. 2013) (en banc). The plurality opinion in *CLS Bank* identified a two-step process, derived from the Supreme Court's decision in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, ___ U.S. ___, 132 S. Ct. 1289 (2012), for analyzing patent eligibility under § 101. First, the court must identify "whether the claimed invention fits within one of the four statutory classes set out in § 101." *CLS Bank*, 717 F.3d at 1282. Second, one must assess whether any of the judicially recognized exceptions to subject-matter eligibility apply, including whether the claims are to patent-ineligible abstract ideas. *Id.* (citing *Mayo*, 132 S. Ct. at 1302–03).

In the case of abstractness, the court must determine whether the claim poses "any risk of preempting an abstract idea." *Id.* To do so the court must first "identify and define whatever fundamental concept appears wrapped up in the claim." *Id.*; *see also Ultramercial*, 2013 WL 3111303, at *18 (Lourie, J., concurring) (same). Then, proceeding with the preemption analysis, the balance of the claim is evaluated to determine whether "additional substantive limitations . . . narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself." *CLS Bank*, 717 F.3d at 1282 (citing *Mayo*, 132 S. Ct. at 1300; *Bilski*, 130 S. Ct. at 3231; *Diamond v. Diehr*, 450 U.S. at 187).

ACCENTURE GLOBAL SERVICES v. GUIDEWIRE SOFTWARE, INC.   9

Although *CLS Bank* issued as a plurality opinion, in that case a majority of the court held that system claims that closely track method claims and are grounded by the same meaningful limitations will generally rise and fall together.   *Id.* at 1274 n.1 (Lourie, Dyk, Prost, Reyna, & Wallach, JJ., plurality opinion) ("[E]ight judges, a majority, have concluded that the particular method, medium, and system claims at issue in this case should rise or fall together in the § 101 analysis.").   Those judges came to that conclusion because the method and system claims were so closely related that the system claim essentially implemented the process of the method claim on a general purpose computer.   *See id.* at 1291 ("Despite minor differences in terminology . . . the asserted method and system claims require performance of the same basic process.   Although the system claim associates certain computer components with some of the method steps, none of the recited hardware offers a meaningful limitation beyond generally linking 'the use of the [method] to a particular technological environment,' that is, implementation via computers." (quoting *Bilski*, 130 S. Ct. at 3230)); *id.* at 1322 (Newman, J., concurring in part and dissenting in part) ("[P]atent eligibility does not depend on the form of the claim, whether computer-implemented innovations are claimed as a method or a system or a storage medium, whether implemented in hardware or software.   Patent eligibility does not turn on the ingenuity of the draftsman.").   That is the case here.

The district court in this case held that the method claims of the '284 patent are invalid under § 101.   *Accenture*, 800 F. Supp. 2d at 621–22.   That judgment was not appealed by Accenture.   Appellant Br. 10 n.3.   Because the judgment as to the method claims was not appealed, it is final and conclusive.   *See Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1387 (Fed. Cir. 1999) ("An issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived."); *see also Miss. Chem.*

*Corp. v. Swift Agr. Chems.*, 717 F.2d 1374, 1376–77 (Fed. Cir. 1983).

We conclude that the district court's decision on patent-ineligibility of the system claims must also be affirmed, both because the system claims offer no meaningful limitations beyond the method claims that have been held patent-ineligible and because, when considered on their own, under *Mayo* and our plurality opinion in *CLS Bank*, they fail to pass muster. Although the issue of the patent eligibility of the method claims is not before us, as it has not been appealed, it is plain to us that, as the district court held, those claims are ineligible for patent.

Because the '284 patent's method claims have been found to be patent ineligible, we first compare the substantive limitations of the method claim and the system claim to see if the system claim offers a "meaningful limitation" to the abstract method claim, which has already been adjudicated to be patent-ineligible. *CLS Bank*, 717 F.3d at 1291. Under this analysis, we compare the two claims to determine what limitations overlap, then identify the system claim's additional limitations. Essentially, we must determine whether the system claim offers meaningful limitations "beyond generally linking 'the use of the [method] to a particular technological environment.'" *Id.* (quoting *Bilski*, 130 S. Ct. at 3230).

It is not disputed by the parties that the '284 patent's system claim 1 includes virtually the same limitations and many of the same software components as the patent-ineligible method claims. Both claims are for "generating tasks to be performed in an insurance organization." '284 patent col. 107 ll. 25–26, col. 108 ll. 11–12. Both the claimed system and the claimed method contain an insurance transaction database containing information relating to an insurance transaction "decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level, wherein the plurality of levels reflects a policy, the information related

to the insurance transaction, claimants and an insured person in a structured format." *Id.* col. 107 ll. 28–36, col. 108 ll. 20–30. Additionally, claim 1 and claim 8 both contain: a client component, *id.* col. 107 l. 40, col. 108 ll. 34–39; a task assistant, *id.* col. 107 l. 49, col. 108 l. 31; and an event processor, *id.* col. 107 l. 49, col. 108 l. 21. The system claims are simply the method claims implemented on a system for performing the method.

Accenture only points to system claim 1's inclusion of an insurance claim folder, a task library database, a server component, and a task engine in attempting to show that the system claim is meaningfully different from the '284 patent's method claims. However, these software components are all present in the method claims, albeit without a specific reference to those components by name.

Although system claim 1 specifically includes a task engine, *id.* col. 107 l. 49, method claim 8 includes all the components required for a task engine. *Compare id.* col. 107 ll. 1–4 *with id.* col. 108 ll. 17–22. According to the specification, the task engine "follows a process of evaluating events, determining claim characteristics, and matching the claim's characteristics to tasks defined in the Task Library." *Id.* col. 107 ll. 1–4. Method claim 8, likewise, includes an event processor, "determin[es] characteristics," and "appl[ies] the characteristics . . . to determine a task to be completed." *Id.* col. 108 ll. 17–22. Method claim 8 thus includes the limitations of the task engine, albeit without calling it a task engine. Likewise, the server component of system claim 1 includes "an event processor, a task engine and a task assistant," *id.* col. 107 ll. 48–49, all of which are present in the method of claim 8, *id.* col. 108 ll. 17–34.

For the claim folder, system claim 1 describes the claim folder as a component within the insurance transaction database. '284 patent col. 107 ll. 29–31 ("the insurance transaction database comprising a claim folder containing the information related to the insurance transaction"). The claim folder "manages claim infor-

mation . . . by providing a structured and easy to use interface . . . . [It] decomposes a claim into different levels that reflect the policy, the insured, the claim, the claimants, and the claimant's lines." *Id.* col. 83 ll. 117–19, col. 84 ll. 34–36.  These levels are already present in the method claim's insurance transaction database.  In fact, method claim 8's description of the insurance transaction database is an almost verbatim duplicate of system claim 1's description, even without an explicit reference to the claim folder.  The insurance transaction database of method claim 8 also stores insurance claims in a structured environment and decomposes them into different levels.  Thus, the claim folder only provides insignificant activity that does not meaningfully differentiate the system claim from the method claim.  *Cf. Diamond v. Diehr*, 450 U.S. 175, 191–92 (1981) ("[I]nsignificant post-solution activity will not transform an unpatentable principle into a patentable process.").

Regarding the task library database, system claim 1 discloses that the task library database is "for storing rules for determining tasks to be completed upon an occurrence of an event." *Id.* col. 107 ll. 38–39.  However, in method claim 8, the information relating to the insurance transaction is applied to "rules to determine a task to be completed, wherein an event processor interacts with an insurance transaction database . . . ." *Id.* col. 108 ll. 19–22.  The task library database is not mentioned in the specification, although it is apparently a database of the rules described as the Task Library, *id.* col. 107 ll. 5–13, so that the only information relating to that component is provided by system claim 1 and its related dependent claims.  Nevertheless, the task library database is simply a formalized collection of the rules that are present and applied to the insurance transaction information in method claim 8.

Indeed, even the specification of the '284 patent makes little distinction between the system and method claims.  The patent describes the invention as "[a] com-

puter program . . . for developing component based software capable of handling insurance-related tasks." *Id.* col. 3 ll. 23–25. The patent then discloses detailed software descriptions of the various software components without differentiating between the system or method claims. Further, although the patent's Figure 1 shows a schematic diagram of the invention, one that includes computer hardware, the schematic's hardware is merely composed of generic computer components that would be present in any general purpose computer. *See id.* fig.1 (disclosing a CPU, ROM, RAM, I/O Adapter, Communication Adapter, Display Adapter, and a User Interface Adapter). The patent calls Figure 1 a "representative hardware environment," *id.* col. 1 l. 13, while also acknowledging that the hardware represented in Figure 1 "illustrates a typical hardware configuration of a workstation," *id.* col. 1 ll. 12–15. The patent thus discloses that the representative hardware for the '284 patent is a generic computer. In fact, other than the preamble to claim 1 stating that it is a system claim, the limitations of system claim 1 recite no specific hardware that differentiates it from method claim 8. Indeed, in this case "[t]he system claims are [akin] to stating the abstract idea [of the method claim] . . . and adding the words: 'apply it' on a computer." *CLS Bank*, 717 F.3d at 1291 (plurality opinion) (citing *Mayo*, 132 S. Ct. at 1294).

Because the system claim and method claim contain only "minor differences in terminology [but] require performance of the same basic process," *id.* at 1291, they should rise or fall together. Accenture only cited four additional limitations in system claim 1, and we have already indicated why those limitations do not meaningfully distinguish the abstract idea over the patent ineligible method claim. While it is not always true that related system claims are patent-ineligible because similar method claims are, when they exist in the same patent and are shown to contain insignificant meaningful limitations, the conclusion of ineligibility is inescapable. Thus, like the

unappealed method claims, the system claims of the '284 patent are invalid under 35 U.S.C. § 101.

## II. The System Claims on their Own

As indicated earlier, the system claims are ineligible for patenting, aside from the status of the method claims, because they fail to include limitations that set them apart from the abstract idea of handling insurance-related information.

The district court, relying on the Supreme Court's *Bilski* opinion, found that all claims of the '284 patent were invalid under 35 U.S.C. § 101.  The court determined that the abstract idea of the patent was drawn to "concepts for organizing data rather than to specific devices or systems."  *Accenture*, 800 F. Supp. 2d at 621.  The court further held that the limitations present in the claims did not significantly distinguish the claims from that abstract idea.  *Id.* at 621 (citing *Bilski*, 130 S. Ct. at 3231; *Parker*, 437 U.S. at 589–90).  In this regard, the district court's analysis was similar to the abstractness analysis articulated in the plurality opinion of *CLS Bank*.

Accenture argues that system claim 1 remains patent-eligible even after our decision in *CLS Bank*.  It contends that the claim is patent-eligible because the '284 patent implements the general idea of generating tasks for insurance claim processing, but narrows it through its recitation of a combination of computer components including an insurance transaction database, a task library database, a client component, and a server component, which includes an event processor, a task engine, and a task assistant.  Accenture further argues that the complexity and detail of the specification demonstrate that the patent is an advance in computer software and not simply a claim to an abstract idea.   Additionally, Accenture points to our recently-issued decision in *Ultramercial* as support for the patent-eligibility of system claim 1.

Guidewire responds that system claim 1 sets forth the same steps and recites all the same elements as method claim 8 and requires no specific hardware or any particular algorithm.  With regard to *Ultramercial*, Guidewire distinguishes that case based on its procedural posture and the fact that the district court in *Ultramercial* did not have the benefit of claim construction or discovery.

The abstract idea at the heart of system claim 1 of the '284 patent is "generating tasks [based on] rules . . . to be completed upon the occurrence of an event." '284 patent col. 107 ll. 25, 38–39.  Although not as broad as the district court's abstract idea of organizing data, it is nonetheless an abstract concept.  Having identified the abstract idea of the claim, we proceed with a preemption analysis to determine whether "additional substantive limitations . . . narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself." *CLS Bank*, 717 F.3d at 1282 (citing *Mayo*, 132 S. Ct. at 1300; *Bilski*, 130 S. Ct. at 3231; *Diamond v. Diehr*, 450 U.S. at 187); *see also Ultramercial*, 2013 WL 3111303, at *8 ("[T]he relevant inquiry is whether a claim, as a whole, includes *meaningful* limitations restricting it to an application, rather than merely an abstract idea." (citing *Prometheus*, 132 S. Ct. at 1297)).

Accenture attempts to limit the abstract idea of claim 1 by applying it in a computer environment and within the insurance industry.  However, those types of limitations do not "narrow, confine, or otherwise tie down the claim."  As we have recently held, simply implementing an abstract concept on a computer, without meaningful limitations to that concept, does not transform a patent-ineligible claim into a patent-eligible one.  *See Bancorp*, 687 F.3d at 1280.  Further, as the Supreme Court stated in *Bilski*, limiting the application of an abstract idea to one field of use does not necessarily guard against preempting all uses of the abstract idea. *Bilski*, 130 S. Ct. at 3231 (finding that limiting abstract concept of hedging risk to the commodities and energy markets did not make

claim patent-eligible); *see also Diehr*, 450 U.S. at 191 (stating that the prohibition against patenting an abstract principle "cannot be circumvented by attempting to limit the use of the [principle] to a particular technological environment" (citing *Flook*, 437 U.S. at 584)). Accenture's attempts to limit the abstract concept to a computer implementation and to a specific industry thus do not provide additional substantive limitations to avoid preempting the abstract idea of system claim 1.

Regarding Accenture's argument concerning the complexity of the specification, including the specification's detailed software implementation guidelines, the important inquiry for a § 101 analysis is to look to the claim. "When the insignificant computer-based limitations are set aside from those claims that contain such limitations, the question under § 101 reduces to an analysis of what additional features remain in the claims." *Bancorp*, 687 F.3d at 1279 (citing *Mayo*, 132 S. Ct. at 1297). The limitations of claim 1 are essentially a database of tasks, a means to allow a client to access those tasks, and a set of rules that are applied to that task on a given event. Although the specification of the '284 patent contains very detailed software implementation guidelines, the system claims themselves only contain generalized software components arranged to implement an abstract concept on a computer. The limitations of the system claims of the '284 patent do not provide sufficient additional features or limit the abstract concept in a meaningful way. In other words, the complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method.

Accenture argues that our decision in *Ultramercial* compels reversal of the district court's invalidation of the system claims. However, as previously discussed, unlike the patent at issue in *Ultramercial*, Accenture's claims do not contain "significantly more than the underlying abstract concept." The claims in *Ultramercial* contained

ACCENTURE GLOBAL SERVICES v. GUIDEWIRE SOFTWARE, INC. 17

additional limitations from the abstract idea of advertising as currency, such as limiting the transaction to an Internet website, offering free access conditioned on viewing a sponsor message, and only applying to a media product. *See Ultramercial*, 2013 WL 3111303, at *15.

The '284 patent's system claim 1, however, is similar to the patent-ineligible system claim from *CLS Bank*. That claim contained limitations such as a data storage unit and a general purpose computer that received transactions, adjusted variables in the data storage unit, and generated instructions. *CLS Bank*, 717 F.3d at 1289. The district court's finding of patent ineligibility for the asserted system claim in *CLS Bank* was affirmed by an equally divided court. *Id.* at 1273. Similarly, in *Bancorp*, we found a system claim comprising digital storage, a policy generator, a debitor, and various calculators patent-ineligible because the limitations of that claim were directed to no more than the abstract idea of managing a stable value protected life insurance policy. *Bancorp*, 687 F.3d at 1272, 1280–81. Comparing these cases, we find that the system claim of the '284 patent is more akin to the patent-ineligible claims of *CLS Bank* and *Bancorp*. Unlike the claims at issue in *Ultramercial*, the system claims in the '284 patent contain only generalized steps of generating a task in response to events.

Moreover, we agree with Guidewire that the procedural posture of *Ultramercial* creates a different situation from the case before us. In *Ultramercial*, we reversed the district court's grant of a defendant's preanswer motion to dismiss. *Ultramercial*, 2013 WL 3111303, at *2. In that case, the court found Ultramercial's patent ineligible under § 101 without formally construing the claims and with no discovery. *Id.* On that posture, we noted that "the complaint and the patent must by themselves show clear and convincing evidence that the claim is not directed to an application of an abstract idea, but to a disembodied abstract idea itself." *Id.* at *14. We further noted that the district court should have either construed

the claims in the light most favorable to the patentee or required the defendant to establish subject matter ineligibility by clear and convincing evidence.  *Id.*  Accenture does not point to any error in claim construction or to a fact issue that requires additional discovery.  In this case, the court conducted formal discovery, construed the claims, and ruled on a motion for summary judgment. Although we determined that formal claim construction was not needed to evaluate the patent in *Ultramercial,* the procedural posture before us presents a different scenario than what we encountered in *Ultramercial.*

In sum, the system claims of the '284 patent are patent-ineligible both because Accenture was unable to point to any substantial limitations that separate them from the similar, patent-ineligible method claim and because, under the two-part test of *CLS Bank*, the system claim does not, on its own, provide substantial limitations to the claim's patent-ineligible abstract idea.  We thus conclude that claims 1–7 of the '284 patent are invalid under 35 U.S.C. § 101.  Accordingly, the decision of the district court granting summary judgment of invalidity under § 101 is

**AFFIRMED**

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔠𝔦𝔯𝔠𝔲𝔦𝔱

―――――――――

**ACCENTURE GLOBAL SERVICES, GMBH AND ACCENTURE LLP,**
*Plaintiffs-Appellants,*

**v.**

**GUIDEWIRE SOFTWARE, INC.,**
*Defendant-Appellee.*

―――――――――

2011-1486

―――――――――

Appeal from the United States District Court for the District of Delaware in No. 07-CV-0826, Judge Sue L. Robinson.

―――――――――

RADER, *Chief Judge,* dissenting.

"[A]ny claim can be stripped down, simplified, generalized, or paraphrased to remove all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed.  A court cannot go hunting for abstractions by ignoring the concrete, palpable, tangible limitations of the invention the patentee actually claims."  *Ultramercial, Inc. v. Hulu, LLC*, 2010-1544, 2013 WL 3111303, at *8 (Fed. Cir. June 21, 2013).  In my judgment, the court has done precisely that.  Therefore, I respectfully dissent.

I.

As an initial matter, the court relies significantly on the framework proposed by the plurality opinion in *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269 (Fed. Cir. 2013) (en banc). However, no part of *CLS Bank*, including the plurality opinion, carries the weight of precedent. The court's focus should be on Supreme Court precedent and precedent from this court.

I also disagree that Accenture's failure to appeal the invalidation of the method claims estops it from arguing that the elements contained therein (and shared by the systems claims) are directed to patent-eligible subject matter. Majority Op. at 10 ("Because the '284 patent's method claims have been found to be patent ineligible, we first compare the substantive limitations of the method claim and the system claim to see if the system claim offers a 'meaningful limitation' to the abstract method claim, which has already been adjudicated to be patent-ineligible."). No precedent from the Supreme Court or this court supports this proposition. Moreover, the court creates a very unsound policy by requiring litigants to appeal the invalidity of every claim or else risk the potential for estoppel or waiver of other claims. In simple words, Accenture's willingness to narrow issues should not create an admission that defeats its appealed claims. The court today sends a signal that cautious litigants must appeal everything to avoid losing important claims.

The court weakly reasons that "[a]lthough *CLS Bank* issued as a plurality opinion, in that case a majority of the court held that system claims that closely track method claims and are grounded by the same meaningful limitations will generally rise and fall together." Majority Op. at 9. However, five of the judges who held that the method claims and system claims rise or fall together stated:

> To be clear, the fact that one or more related method claims has failed under § 101, as here, does not dictate that all associated system claims

ACCENTURE GLOBAL SERVICES v. GUIDEWIRE SOFTWARE, INC.   3

> or even all associated method claims must suffer the same fate. . . .  [A] system claim that builds on the same abstract idea as a patent-ineligible method may well incorporate sufficient additional limitations, computer-based or otherwise, to transform that idea into a patent-eligible application."

*CLS Bank*, 717 F.3d at 1291 n. 4 (opinion of Lourie, J.). Two other judges held that the claims in *CLS Bank* rise or fall together simply due to the record to which the court was bound, "not because, as [the plurality] opinion concludes, they are all tainted by reference to the same abstract concept." *Id*. at 1327 (opinion of Linn, J.). And four judges specifically held that "[d]ifferent claims will have different limitations; each must be considered as actually written." *Id*. at 1298 (opinion of Rader, C.J.). This latter view was recently affirmed by the court: "the question of eligible subject matter must be determined on a claim-by-claim basis." *Ultramercial*, 2013 WL 3111303, at *4. In sum, the court actually follows a procedure rejected almost unanimously by this court.

## II.

On the merits, I would hold that the claimed systems present patent-eligible subject matter. The claims require a specific combination of computer components, including an insurance transaction database, a task library database, a client component, and a server component that includes an event processor, task engine, and task assistant. Transaction information is stored in an electronic "claim folder" organized into a plurality of different levels. The event processor is triggered upon the occurrence of certain events, which in turn, triggers the task engine and the task assistant to perform certain functions. The claims also require the server component to be in communication with the client component, the insurance transaction database, and the task library database.

4   ACCENTURE GLOBAL SERVICES v. GUIDEWIRE SOFTWARE, INC.

The court strips away these limitations and concludes that "the abstract idea at the heart of system claim 1 is generating tasks based on rules to be completed upon the occurrence of an event." Majority Op. at 15. "[A]ll inventions at some level embody . . . [an] abstract idea," and dissecting from a claim all of its concrete limitations is one step closer towards "eviscerat[ing] patent law." *Mayo Collaborative Servs. v. Prometheus Labs.*, Inc., 132 S. Ct. 1289, 1293 (2012). The claims offer "significantly more" than the purported abstract idea, *id.* at 1298, and meaningfully limit the claims' scope.

Indeed, someone can "generate tasks based on rules to be completed upon the occurrence of an event" in a number of ways without infringing the claims. *See CLS Bank*, 717 F.3d at 1277 (opinion of Lourie, J.) ("[T]he Supreme Court's foundational § 101 jurisprudence . . . turns primarily on the practical likelihood of a claim preempting a fundamental concept."); *id.* at 1300 (opinion of Rader, C.J.) ("Pre-emption is only a subject matter eligibility problem when a claim preempts all practical uses of an abstract idea."). For example, one could use a single database rather than the recited multiple databases; one could utilize an electronic claim folder decomposed into a different plurality of levels or into non-insurance related levels (*i.e.*, levels other than a policy level, claim level, participant level, and line level); and one could use something other than a client-server architecture. Moreover, because the claims require specific computer components, a human performing the claimed steps through a combination of physical or mental steps likewise does not infringe. In sum, this system does not preempt anything beyond the specific claims, let alone a broad and undefined concept.

III.

In conclusion, I note that prior to granting *en banc* review in *CLS Bank*, this court commented: "no one understands what makes an idea abstract." *CLS Bank Int'l v. Alice Corp.*, 685 F.3d 1341, 1349 (Fed. Cir. 2012), *opinion*

ACCENTURE GLOBAL SERVICES v. GUIDEWIRE SOFTWARE, INC.   5

*vacated*, 484 F. App'x 559 (Fed. Cir. 2012) (internal quotations marks omitted).   After *CLS Bank*, nothing has changed.   "Our opinions spend page after page revisiting our cases and those of the Supreme Court, and still we continue to disagree vigorously over what is or is not patentable subject matter."   *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1259 (Fed. Cir. 2012); *see generally CLS Bank*.   Indeed, deciding what makes an idea "abstract" is "reminiscent of the oenologists trying to describe a new wine."   *MySpace*, 672 F.3d at 1259.

I take this opportunity to reiterate my view that "the remedy is the same: consult the statute!"   *CLS Bank*, 717 F.3d at 1335 (additional reflections of Rader, C.J.).   The statute offers broad categories of patent-eligible subject matter.   The "ineligible" subject matter in these system claims is a further testament to the perversity of a standard without rules—the result of abandoning the statute. I respectfully dissent.